RECORD NO.

# 14-2637

In The

# United States Court of Appeals

### For The Second Circuit

## FRANK OWENS,

*Plaintiff – Appellant*,

**v.**

## TEXTRON FINANCIAL CORPORATION,

*Defendant – Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
AT WHITE PLAINS**

———————

## BRIEF OF APPELLANT

———————

Morton I. Baum
BAUM LAW OFFICES, LLP
438 Broadway
Monticello, New York 12701
(845) 791-1000

*Counsel for Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ................................................................................1

STATEMENT OF THE ISSUES...............................................................................1

STATEMENT OF THE CASE AND FACTS ..........................................................2

SUMMARY OF ARGUMENT .................................................................................6

STANDARD OF REVIEW .......................................................................................7

ARGUMENT .............................................................................................................7

      POINT I:    TEXTRON DID NOT RECEIVE THE $2,000,000.00
                 STOLEN FROM OWENS IN DUE COURSE AND IN
                 GOOD FAITH .............................................................................7

      POINT II:   SOUTHERN DISTRICT ERRED IN REFERRING TO
                 PLAINTIFF'S LEGAL THEORY AS A VAGUE
                 REFERENCE TO NEW YORK LAW AND
                 REJECTING BANKRUPTCY CASES ANALYZING
                 DUE COURSE, ORDINARY COURSE OF BUSINESS
                 AND GOOD FAITH....................................................................11

      POINT III:  THE $2,000,000.00 STOLEN FROM OWENS WAS
                 NOT CO-MINGLED AND IS TRACEABLE ..........................14

    CONCLUSION:  DISMISSAL SHOULD BE REVERSED AND THE
                 AMENDED COMPLAINT REINSTATED ............................16

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*,
    556 N.Y.662 (2009) ..................................................................................13

*Banque Worms v. Bankamerica International,*
*Defendant and Third-Party Plaintiff,*
*Security Pacific International Bank, Third-Party Defendant*,
    77 N.Y.2d 362 (1991) ...................................................................................9

*Carr v. Hoy*,
    2 N.Y.2d 185, 158 N.Y.S.2d 572,
    139 N.E.2d 531 (Ct. App. 1957), *affirming*,
    285 App. Div. 968, 138 N.Y.S.2d 682 (App. Div. 1955),
    *remittitur amended*, 2 N.Y.2d 882,
    161 N.Y.S.2d 137, 141 N.E.2d 623 (Ct. App. 1957) .....................................7

*Commodity Futures Trading Commission v.*
*Chilcott Portfolio Management, Inc.*,
    713 F.2d 1477 (10th Cir. 1983) ..................................................................15

*Commodity Futures Trading Commission v.*
*Stephen Walsh and Janet Walsh*,
    17 N.Y.3d 162, 951 N.E.2d 369, 927 N.Y.S.2d 821 (2011) ..............8, 13, 14

*Cunningham v. Brown*,
    265 U.S. 1, 68 L. Ed. 873, 44 S. Ct. 424 (1924) ..........................................15

*In re Agape Litigation*,
    681 F. Supp. 2d 352 (E.D.N.Y. 2010) ..........................................................14

*In re CIS Corp.*,
    214 B.R. 108 (Bankr. S.D.N.Y. 1997) ..........................................................11

*In re Drexel Burnham Lambert Group, Inc.*,
    157 B.R. 532 (Bankr. S.D.N.Y. 1993) ..........................................................11

*In re Faleck & Margolies, Inc.*,
 153 B.R. 123 (Bankr. S.D.N.Y. 1993) ....................................................11, 12

*In re Kelly's Chocolates, Inc.*,
 268 B.R. 345 (Bankr. W.D.N.Y. 2001) .........................................................11

*In re Mark Benskin & Co.*,
 161 B.R. 644 (Bankr. W.D. Tenn. 1993) ......................................................15

*In re Ramco/Fizsimons Steel Co., Inc.*,
 95 B.R. 299 (Bankr. W.D.N.Y. 1988) ...........................................................11

*In re Schick*,
 234 B.R. 337 (Bankr. S.D.N.Y. 1999) ..........................................................11

*In re Singer Products Co., Inc.*,
 102 B.R. 912 (Bankr. E.D.N.Y. 1989) ..........................................................11

*In re Stotler & Co.*,
 144 B.R. 385 (Bankr. N.D. Ill. 1992) ...........................................................15

*In re Universal Clearing House*,
 62 B.R. 118 (Bankr. D. Utah 1986) ..............................................................15

*Iorizzo*,
 114 B.R. 19 (Bankr. E.D.N.Y. 1990) ............................................................15

*M & L Business Machine Company, Inc. v.*
*Youth Benefits Unlimited, Inc.*,
 59 F.3d 1078 (10th Cir. 1995) ...............................................................15, 16

*McConnell v. Commonwealth Pictures Corp.*,
 7 N.Y.2d 465, 199 N.Y.S.2d 483, 166 N.E.2d 494 (1960) ............................8

*Stephens v. Board of Educ. of Brooklyn*,
 79 N.Y. 183 (1879) ......................................................................................10

**STATUTES**

11 U.S.C. § 547 .................................................................................11

28 U.S.C. § 1291 .................................................................................1

28 U.S.C. § 1332 .................................................................................1

**RULES**

Fed. R. Civ. P. 8 .................................................................................7

Fed. R. Civ. P. 9(b) ......................................................................2, 7, 16

Fed. R. Civ. P. 12(b)(6)................................................................1, 2

**OTHER AUTHORITY**

87 N.Y. Jur. 2d Property § 14 .............................................................8

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This is an appeal from a Memorandum Decision of the District Court of the Southern District of New York (Vincent L. Briccetti, United States District Judge) granting defendant Textron Financial Corporation's motion to dismiss plaintiff Frank Owens' amended complaint under Rule 12(b)(6).

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

This Court has appellate jurisdiction because the order dismissing the action is a final appealable order pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Did Owens amended complaint allege facts to show that Textron had knowledge of, or should have known, through its audit of the books and records of Gaffken & Barriger Fund, LLC that the fund was engaged in criminal activity, was insolvent, and unable to pay its creditors in due course?

2.      Was the theft of the $2,000,000.00 and immediate payment of the stolen $2,000,000.00 by the Fund to Textron made in due course?

3.      Did the amended complaint state a claim for which relief can be granted?

4.      Did the amended complaint state sufficient facts to give Textron fair notice?

1

5.      Did plaintiff's amended complaint contain allegations seeking to recover $2,000,000.00 proceeds of a crime paid by Gaffken & Barriger, LLC to Textron Financial Corporation in satisfaction of an antecedent debt sufficient to satisfy the pleading standards set forth in Rule 8?

6.      Is Rule 9(b) applicable at all and, if applicable, did plaintiff's amended complaint contain allegations seeking to recover $2,000,000.00 proceeds of a crime paid by Gaffken & Barriger, LLC to Textron Financial Corporation in satisfaction of an antecedent debt sufficient to satisfy the pleading standards of Rule 9(b)?

## STATEMENT OF THE CASE AND FACTS

Frank Owens started the action to recover $2,000,000.00 stolen from him by Gaffken & Barriger Fund, LLC and Lloyd Barriger.  The stolen $2,000,000.00 was immediately transferred by wire by Gaffken & Barriger Fund, LLC to Textron Financial Corporation as payment on an antecedent debt.

Textron Financial Corporation, relying on Rule 12(b)(6), moved to dismiss Owens' amended complaint for failure to comply with Rule 12(b)(6) and the motion was granted by Memorandum Decision of the Southern District so ordered by Hon. Vincent L. Briccetti, United States District Judge, on July 14, 2014.

2

Textron Financial Corporation chose to select and dispose of the claims for relief it thinks Frank Owens should be trying to establish, "fraudulent conveyance, unjust enrichment, aiding and abetting", and allege in his complaint. The Southern District decision erroneously went in this direction. A-196.

Textron Financial Corporation is a factor who loaned money to Gaffken & Barriger Fund, LLC pursuant to a Loan Agreement. Am. Compl. ¶19, A-27.

Gaffken & Barriger Fund, LLC, Lloyd Vernon Barriger, and Andrew McKean stole Two Million ($2,000,000.00) Dollars from Frank Owens on September 27, 2007 and simultaneously wired it to the direct beneficiary of their crime, Textron Financial Corporation, to be applied to an antecedent debt that was in default. Am. Compl. ¶17, A-27.

Per provisions of the Loan Agreement, Textron Financial Corporation, months before the theft, reviewed and audited the books and records of Gaffken & Barriger Fund, LLC to analyze the default and discover the criminal activities of Gaffken & Barriger Fund, LLC, Lloyd Vernon Barriger, and Andrew McKean who were conducting an illegal Ponzi Scheme, defrauding investors and defrauding others. Am. Compl. ¶30, 31, 35, 36, 37, 38, 39 and 40, A-31 through A-34.

Textron had a receiver appointed by Order of Supreme Court of Sullivan County signed on August 10, 2011 and entered August 12, 2011. Am. Compl. ¶18, A-27.

Frank Owens does not base his complaint and claim for relief, as Textron Financial Corporation contends, on setting aside a fraudulent transfer, unjust enrichment or aiding and abetting. Am. Compl. ¶WHEREFORE, A-37.

Frank Owens seeks recovery by tracing the Two Million ($2,000,000.00) Dollars stolen from him on the following grounds:

a.      Textron Financial Corporation, months before the theft, knew that Gaffken & Barriger Fund, LLC, Lloyd Vernon Barriger, and Andrew McKean were conducting an illegal Ponzi Scheme defrauding investors, defrauding others such as Frank Owens, and opted to let the Ponzi Scheme play out so that it could obtain payments without formally declaring a default requiring it to obtain further payment via foreclosure proceedings, real and personal property. Am. Compl. ¶23, 24, A-28, ¶30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40 and 41, A-31 through A-34.

b.      "By reservation of rights letter dated April 18, 2007 from Textron Financial Corporation to Gaffken & Barriger Fund, LLC, Attention: Lloyd V. Barriger, Textron Financial Corporation, in addition to other things, declared:

> Events of default have occurred and currently exist under
> the Agreement as a result of the Borrower's failure to
> comply with the maximum delinquent loan covenant set
> forth in Section 7.6(d) of the Agreement for the month
> ended March 31, 2007 (the foregoing defaults are
> collectively referred to herein as, the "Current
> Defaults")." Am. Compl. ¶34, A-11.

c.      Gaffken & Barriger Fund, LLC and Lloyd Vernon Barriger stole Two

Million ($2,000,000.00) Dollars from Frank Owens. Am. Compl. ¶9, 10 and 11, A-

26.

d.      New York public policy dictates that no one may acquire property by

his or her own fraudulent or criminal conduct. Title to the Two Million

($2,000,000.00) Dollars did not vest in Gaffken & Barriger Fund, LLC. Am.

Compl. ¶16, A-27.

e.      Lloyd Vernon Barriger pleaded guilty to the crimes, is presently

awaiting sentencing, and is about to go to jail. Am. Compl. ¶48 and 49,A-35.[1]

f.      The Two Million ($2,000,000.00) Dollars was moved by wire

specifically traceable to Textron Financial Corporation and not commingled with

other funds. Am. Compl. ¶42, 43, 44, A-34, ¶50, 51, 52, 53 and 54, A-36 and A-

37.

---

[1] Barriger is presently incarcerated.

5

g.      The movement of the Two Million ($2,000,000.00) Dollars was not a payment made in the ordinary course of business.  Am. Compl. ¶55, A-37.

h.      The ordinary course of business concept, applicable to both transferor and transferee, encompasses or contemplates business activities that are legal in nature.  The Ponzi Scheme is illegal and there can be no "ordinary course of business" nor "ordinary business transactions" for an enterprise engaged in illegal activities.  Am. Compl. ¶30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40 and 41, A-32 through A-34.

i.      Textron Financial Corporation is not an innocent or a bona fide transferee.  It did not receive the stolen Two Million ($2,000,000.00) Dollars in good faith and in the ordinary course of business.  Am. Compl. ¶55 and 56, A-37.

## SUMMARY OF ARGUMENT

Stolen money in the hands of a third party may be recovered if it was not received in good faith, bona fide, for valuable consideration and in due course or ordinary course of business.

The transfer of the Two Million ($2,000,000.00) Dollars via wire from Gaffken & Barriger Fund, LLC to Textron Financial Corporation was not made in the ordinary course of business.  The Two Million ($2,000,000.00) Dollars was traceable and not commingled.  Textron Financial Corporation is not a bona fide

6

transferee without knowledge of the criminal activities of Gaffken & Barriger Fund, LLC and Lloyd Vernon Barriger which provides the source of the Two Million ($2,000,000.00) Dollars and did not receive the Two Million ($2,000,000.00) Dollars in due course and in good faith.

The allegations of the amended complaint are sufficient to give due notice to Textron for preparation of its defense under Rule 8 and if Rule 9(b) is applicable, the allegations of the complaint are also sufficient.

## STANDARD OF REVIEW

The appellate standard of review is a *de novo* review of New York Law as applied to the allegations of the amended complaint accepted as true in light most favorable to Owens.

## ARGUMENT

## POINT I

## TEXTRON DID NOT RECEIVE THE $2,000,000.00 STOLEN FROM OWENS IN DUE COURSE AND IN GOOD FAITH

New York public policy dictates that no one may acquire property by his or her own fraudulent or criminal conduct. *Carr v. Hoy* (1957) 2 N.Y.2d 185, 158 N.Y.S.2d 572, 139 N.E.2d 531, remittitur amd 2 N.Y.2d 882, 161 N.Y.S.2d 137, 141 N.E.2d 623; *McConnell v. Commonwealth Pictures Corp.* (1960) 7 N.Y.2d

465, 199 N.Y.S.2d 483, 166 N.E.2d 494; 87 N.Y. Jur. 2d Property §14. Property

acquired fraudulently or by crime does not pass with title. Title to the Two Million

($2,000,000.00) Dollars did not vest in Gaffken & Barriger Fund, LLC and

therefore was not subject to the lien claimed by Textron Financial Corporation.

Plaintiff does not claim or contend Textron participated in the fraud or crime itself.

The Court of Appeals of New York in *Commodity Futures Trading*

*Commission v. Stephen Walsh and Janet Walsh*, 17 N.Y.3d 162, 951 N.E.2d 369,

927 N.Y.S.2d 821, succinctly stated:

> "[5][6] It has long been the law of this State that "money obtained by fraud or felony cannot be followed by the true owner into the *173 hands of one who has received it *bona fide* and for a valuable consideration in due course of business" (*Stephens v. Board of Educ. of Brooklyn*, 79 N.Y. 183, 186 [1879] ). This principle is premised on the recognition that, in contrast to chattels, "money has no earmark" and "cannot be identified" (*Hatch v. Fourth Natl. Bank of City of N.Y.*, 147 N.Y. 184, 192, 41 N.E. 403 [1895] ). FN5 At its core, our rule favoring innocent transferees of stolen funds over defrauded owners is rooted in New York's "concern for finality in business transactions" (*Banque Worms v. Bank America Intl.*, 77 N.Y.2d 362, 372, 570 N.E.2d 189 [1991] ). We have explained that

> > FN5. By comparison, an owner may seek recovery of identifiable stolen property, such as a piece of artwork, from an innocent good faith purchaser for value (*see Solomon R. Guggenheim Found v. Lubell*, 77 N.Y.2d 311, 317, 567 N.Y.2d 623, 569 N.E.2d 426 [1991] ).

> "to permit in every case of the payment of a debt an inquiry as to the source from which the debtor derived the money, and a recovery if shown to have been dishonestly acquired, would disorganize all business operations and entail an amount of risk and uncertainty which no enterprise could bear" (*id.* [internal quotation marks and citation omitted] )."

In *Banque Worms v. Bankamerica International, Defendant and Third-Party Plaintiff, Security Pacific International Bank, Third-Party Defendant*, 77 N.Y.2d 362 (1991), the Court of Appeals also stated:

> "This concern for finality in business transactions has long been a significant policy consideration in this State. In a different but pertinent context, we observed in *Hatch v. Fourth Natl. Bank* (147 N.Y.184, 192) that 'to permit in every case of the payment of a debt an inquiry as to the source from which the debtor derived the money, and a recovery if shown to have been dishonestly acquired, would disorganize all business operations and entail an amount of risk and uncertainty which no enterprise could bear.'

> A consequence of this concern has been the adoption of a rule which precludes recovery from a third person, who as the result of the mistake of one or both of the parties to an original transaction receives payment by one of them in good faith in the ordinary course of business and for a valuable consideration (see, *Ball v. Shepard,* 202 N.Y. 247, *supra*). This rule is grounded in "considerations of public policy and convenience for the protection and encouragement of trade and commerce by guarding the security and certainty of business *373 transactions, since to hold otherwise would obviously introduce confusion and danger into all commercial dealings" (44 NY Jur, Payment, § 107; *see also, Southwick v. First Natl. Bank,* 84 N.Y. 420). We have previously held that from these considerations, "[t]he law wisely * * * adjudges that the possession of money vests the title in the holder as to third

persons dealing with him and receiving it in due course of business and in good faith upon a valid consideration." (*Stephens v. Board of Educ.,* 79 N.Y. 183, 187-188.)"

The transfer of the Two Million ($2,000,000.00) Dollars via wire from Gaffken & Barriger Fund, LLC to Textron Financial Corporation was not made in the ordinary course of business. The Two Million ($2,000,000.00) Dollars was traceable and not commingled. Textron Financial Corporation is not a bona fide transferee without knowledge of the criminal activities of Gaffken & Barriger Fund, LLC and Lloyd Vernon Barriger which provides the source of the Two Million ($2,000,000.00) Dollars and did not receive the Two Million ($2,000,000.00) Dollars in due course and in good faith. *Stephens v. Board of Educ.*, *supra*, and its progeny.

## POINT II

### SOUTHERN DISTRICT ERRED IN REFERRING TO PLAINTIFF'S LEGAL THEORY AS A VAGUE REFERENCE TO NEW YORK LAW AND REJECTING BANKRUPTCY CASES ANALYZING DUE COURSE, ORDINARY COURSE OF BUSINESS AND GOOD FAITH

Southern District erred in referring to plaintiff's legal theory as "a vague reference to 'New York Law'" and rejecting bankruptcy cases cited by Owens which were included to illustrate how courts determine or elicit criteria for defining what is ordinary course of business, what is due course, what is good faith, and how business transactions or terms meet or do not meet the criteria.

*In re Drexel Burnham Lambert Group, Inc.*, 157 B.R. 532; *In re Faleck & Margolies,Inc.*, 153 B.R. 123; *In re Singer Products Co., Inc.*, 102 B.R. 912; *In re Schick*, 234 B.R. 337; *In re CIS Corp.,* 214 B.R. 108; *In re Kelly's Chocolates, Inc.*, 268 B.R. 345; *In re Ramco/Fizsimons Steel Co., Inc.*, 95 B.R. 299, discussed generically and disregarded by Southern District are not cited by Owens to set aside preferences under 11 U.S.C. § 547 but to demonstrate an analysis of what is or what is not due course or what is or what is not ordinary course of business or what is or what is not good faith. This is the gravamen of plaintiff's claim and the Southern District did not make the analysis. This type of analysis generally comes up most often in bankruptcy cases involving setting aside of preferences.

However, the methodology and legal principles are analogous. In *Faleck*, *supra*,

District Judge Height made an analysis and stated:

> "Courts have not defined a precise legal test which can be applied; rather, courts must engage in a 'peculiarly factual' analysis. See *Sprowl v. Miami Valley Broadcasting Corp. and WHIO, Inc. (In re Federated Marketing, Inc.),* **123 B.R.** 265 (Bankr.S.D.Ohio 1991). Several factors are relevant to this analysis, including the amount, manner and timing or the transaction, and the circumstances under which the transfer was made. *See Yurika Foods Corp. v. United Parcel Service (In re Yurika Foods Corp.)*, 888 F.2d 42, 45 (6th Cir. 1989). Factors which signal a transfer out of the ordinary include 'untimely payments, payments made in an unusual form, payments made for transactions that are unusual as between the parties.' *Warren v. Huntington National Bank (Matter of Ullman), 80 B.R. 101, 103 (Bankr.S.D.Ohio 1987).*"

The allegations contained in Owens' complaint establish the elements of his claim for relief which includes theft of $2,000,000.00, immediate transfer of the proceeds of the theft to Textron as payment of an antecedent debt, payment made while insolvent, payment made after Textron had made an audit of Gaffken & Barriger Fund financial records which disclosed a discrepancy in accounting which Textron expressly acknowledged and declared, payment made after Textron acknowledged a default which it did not declare, payment accepted by Textron with knowledge of the criminal enterprise engaged in by Gaffken & Barriger Fund, Textron receiving payment in unusual form of wire, and not made in the ordinary

12

course of payments usually made by Gaffken & Barriger Fund.  These assertions satisfy the legal standards set forth in Rule 8 and reiterated by Southern District as follows:

> "A pleading that states a claim for relief must contain. . .a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the. . .claim is and the grounds upon which it rests."  <u>Bell Atl. Corp. v.. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  The statement should be plain "so as to enable [the adverse party] to answer and prepare for trial."  <u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir. 1988)."

Southern District, although referring to *Commodity Futures Trading Commission v.  Stephan Walsh and Janet Walsh*, *supra,* misapplied its principles.  Textron had notice of Owens' claim sufficient to defend.  If the pleading made by Owens (allegation of payment not in due course and not in the ordinary course of business) is accepted as true for purposes of the motion to dismiss, Owens has properly stated a claim.  Under all of the facts of our case, the claim meets the standard of plausibility.  *Ashcroft v. Iqbal*, 556 N.Y.662 (2009).  If the payment was not made in due course or in the ordinary course of business, that element as illustrated in *Commodity Futures Trading Commission v. Stephan Walsh and Janet Walsh*, *supra*, has been properly pleaded and Owens' complaint should not have been dismissed.  In effect, Southern District has made a finding of fact prematurely

13

and by dismissing the complaint has concluded that the payment was made in due course and in the ordinary course of business. The pleading is to the contrary.

Because Textron, after review of Gaffken & Barriger Fund records, knew of accounting impropriety, conduct of a Ponzi Scheme, failure to keep adequate reserves, failure to declare default, and knew of the insolvency, the payment of the substantial sum of $2,000,000.00 outside the ordinary course of their business could not have been received in good faith; and this was properly alleged in the complaint. *In re Agape Litigation*, 681 F. Supp. 2d 352 (E.D.N.Y. 2010). After the audit, Textron chose to look the other way until it was convenient to have a receiver appointed. Receipt of the $2,000,000.00 was certainly not in good faith.

## POINT III

### THE $2,000,000.00 STOLEN FROM OWENS WAS NOT CO-MINGLED AND IS TRACEABLE

Although the concern for finality in business transactions has long been a significant policy consideration in New York, the policy has modifying conditions affecting the general rule designed to protect and encourage trade and commerce by guarding the security and certainty of business transactions. *Commodity Futures Trading Commission v. Stephen Walsh and Janet Walsh*, *supra*, and its progeny. These conditions are receipt of the money in due course of business and in good faith upon a valuable consideration. *Stephens v. Board of Education*, *supra*.

14

Here, we have a transaction which is not made in the ordinary course of business. The money stolen was not commingled and clearly traceable. The weight of the authority, which recognizes that property acquired fraudulently does not pass with title, also provides that a claimant must be able to identify or trace the fraudulently deprived funds or property to which he claims ownership. *M & L Business Machine Company, Inc. v. Youth Benefits Unlimited, Inc.*, 59 F.3d 1078 (10th Cir. 1995); *In re Mark Benskin & Co.*, 161 B.R. 644, 653-56 (Bankr. W.D. Tenn. 1993); *In re Stotler & Co.*, 144 B.R. 385, 390-92 (Bankr. N.D. Ill.1992); *In re Iorizzo*, 114 B.R. 19, 24 (Bankr. E.D.N.Y. 1990); *In re Universal Clearing House*, 62 B.R. 118, 122-24 (Bankr. D. Utah 1986). Textron Financial Corporation is not an innocent or a bona fide transferee without knowledge that the funds were derived from criminal activity, because it previously reviewed and audited the books and records of Gaffken & Barriger Fund, LLC and knew of its criminal activity and management of the "Ponzi Scheme" as well as defrauding investors and others such as Frank Owens. A "Ponzi Scheme" is a fraudulent enterprise in which funds from more recent investors provide the only source to pay interest to prior investors or to provide thereturn of principal promised to prior investors. *Cunningham v. Brown*, 265 U.S. 1, 44 S. Ct. 424, 68 L. Ed. 873 (1924); *Commodity Futures Trading Commission v. Chilcott Portfolio Management, Inc.*, 713 F.2d 1477, 1480 (10th Cir. 1983); *M & L Business Machine Company, Inc.*,

15

*supra*.  The audit by the accountants for a very sophisticated lender such as Textron would necessarily have disclosed the scheme and insolvency of the Gaffken & Barriger Fund.  If not, there would be no purpose of an audit; and Textron did perform that audit.  Any audit surely would have disclosed the same financial records and the same facts upon which a Southern District jury rendered a pecuniary and punitive verdict in favor of Owens in the amount of $6,500,000.00.  A-205.

## CONCLUSION

### DISMISSAL SHOULD BE REVERSED AND
### THE AMENDED COMPLAINT REINSTATED

The law applicable is the New York law concerning tracing proceeds of a crime from the perpetrator of the crime to a third party receiving those proceeds and under that law Frank Owens is entitled to recover the stolen Two Million ($2,000,000.00) Dollars with interest from September 27, 2007 because the money is clearly traceable, the money was derived from criminal activity, Textron Financial Corporation knew of the criminal activity, the transfer was not made in the ordinary course of business, and Textron Financial Corporation is not an innocent or a bona fide transferee.  The complaint is accordingly well pleaded.  Southern District misapplied Rule 9(b), and even if 9(b) is applicable, Owens' allegations are sufficient.  Textron had the motive to ignore the activities of

16

Gaffken & Barriger Fund and Lloyd Barriger so as to enable them to obtain money with which to make payments on account to reduce the antecedent debt and lessen the risk of loss had a default been declared and the Fund's activities blocked. Textron Financial Corporation is properly apprised of Owens' claim and the WHEREFORE clause is drafted accordingly. The dismissal of the amended complaint by Southern District should be reversed, the amended complaint reinstated, and the action allowed to proceed in ordinary course.

Dated: September 3, 2014

                              BAUM LAW OFFICES, LLP

                              /s/ Morton I. Baum
                              By: Morton I. Baum, Esq.
                              Attorneys for Appellant Frank Owens
                              428 Broadway - P.O. Box 1260
                              Monticello, New York 12701
                              *baumlawoffices@verizon.net*
                              Tel: (845) 791-1000; Fax: (845)794-5763

17

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 3rd day of September, 2014, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Mitchell A. Karlan
> GIBSON, DUNN & CRUTCHER LLP
> 200 Park Avenue, 47th Floor
> New York, New York  10166
> (212) 351-4000
>
> *Counsel for Appellee*

I further certify that on this 3rd of September, 2014, I caused the required number of bound copies of the Brief of Appellant and Joint Appendix to be filed with the Clerk of the Court via UPS Next Day Air.

/s/ Morton I. Baum
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P.
    28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*3,685*] words, excluding the parts of the brief
    exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number
    of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
    32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P.
    32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using
    [*Corel WordPerfect 12*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state
    name and version of word processing program*] with [*state number of
    characters per inch and name of type style*].

Dated: <u>September 3, 2014</u>          <u>/s/ Morton I. Baum</u>
                                          *Counsel for Appellant*