# 14-2637

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

FRANK OWENS,

*Plaintiff-Appellant*,

v.

TEXTRON FINANCIAL CORPORATION,

*Defendant-Appellee*,

On Appeal from the United States District Court
for the Southern District of New York
No. 13-cv-5948 (VB)

## BRIEF FOR DEFENDANT-APPELLEE

Mitchell A. Karlan
Nancy Hart
Gabriel K. Gillett
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

*Attorneys for Defendant-Appellee*
*Textron Financial Corporation*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure,

Defendant-Appellee Textron Financial Corporation is a wholly owned subsidiary

of Textron Inc.

Textron Inc. is a publicly traded corporation that has no parent company.  To

the best of Textron Financial Corporation's knowledge and belief, and based on

publicly filed disclosures, as of October 14, 2014, no publicly held corporation

held 10% or more of Textron Inc.'s stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

COUNTER STATEMENT OF THE ISSUES...........................................3

COUNTER STATEMENT OF THE CASE..............................................4

    A.  2006:  TFC and G&B Enter into Loan and Security Agreement................4

    B.  2007-2008:  Owens's Investment, G&B's Default, and Repayment of Antecedent Debt.........................................................................5

    C.  2011-2013:  Barriger's Indictment Reveals G&B's Fraud .......................7

    D.  2014:  District Court Dismisses Owens's Suit Seeking To Recover His Lost Investment in G&B from TFC, Its Secured Lender ....................7

SUMMARY OF ARGUMENT .................................................................9

ARGUMENT ...........................................................................................10

I.    STANDARD OF REVIEW ...........................................................10

II.   OWENS HAS FAILED TO IDENTIFY A CAUSE OF ACTION, BOTH IN THE DISTRICT COURT AND ON APPEAL, IN VIOLATION OF RULE 8(a)..........................................................11

III.  OWENS'S FACTUAL ALLEGATIONS ARE TOO VAGUE TO SATISFY RULE 9(b), AND IN ANY EVENT INDICATE TFC ACTED IN GOOD FAITH AND IN THE NORMAL COURSE OF BUSINESS. .................................................................................14

IV.  EVEN IF THIS COURT WERE TO RECOGNIZE A CLAIM FOR A "PUBLIC POLICY" VIOLATION UNDER NEW YORK LAW, OWENS COULD NOT RECOVER FROM TFC ...........................................17

CONCLUSION .......................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acito v. IMCERA Grp. Inc.*,
  47 F.3d 47 (2d Cir. 1995) ...................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ...............................................................14

*Banque Worms v. BankAmerica Int'l*,
  726 F. Supp. 940 (S.D.N.Y. 1989) ...................................................13

*Banque Worms v. BankAmerica Int'l*,
  77 N.Y.2d 362 (1991) ........................................................... 3, 13, 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................... 10, 11

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
  750 F.3d 227 (2d Cir. 2014) ..............................................................10

*Carr v. Hoy*,
  2 N.Y.2d 185 (1957) .........................................................................13

*CFTC v. Walsh*,
  17 N.Y.3d 162 (2011) ....................................................... 3, 13, 18, 19

*Chemtex, LLC v. St. Anthony Enters., Inc.*,
  490 F. Supp. 2d 536 (S.D.N.Y. 2007) ...............................................16

*Compania Sud Am. de Vapores S.A. v. Global Term. & Container Servs., LLC*,
  2010 WL 2545764 (S.D.N.Y. June 11, 2010) ....................................11

*Graham v. Lewinski*,
  848 F.2d 342 (2d Cir. 1988) ..............................................................12

*In re Agape Litig.*,
  773 F. Supp. 2d 298 (E.D.N.Y. 2011) ...............................................15

*In re CIS Corp.*,
  214 B.R. 108 (Bankr. S.D.N.Y. 1997) ................................................................19

*In re Drexel Burnham Lambert Grp., Inc.*,
  157 B.R. 532 (Bankr. S.D.N.Y. 1993) ................................................................19

*In re Faleck & Margolies, Inc.*,
  153 B.R. 123 (Bankr. S.D.N.Y. 1993) ................................................................19

*In re Iorizzo*,
  114 B.R. 19 (Bankr. E.D.N.Y. 1990) ................................................................18

*In re Kelly's Chocolates, Inc.*,
  268 B.R. 345 (Bankr. W.D.N.Y. 2001) ................................................................19

*In re Mark Benskin & Co.*,
  161 B.R. 644 (Bankr. W.D. Tenn. 1993) ................................................................18

*In re Ramco/Fitzsimons Steel Co.*,
  95 B.R. 299 (Bankr. W.D.N.Y. 1988) ................................................................19

*In re Refco Inc. Sec. Litig.*,
  2012 WL 3126834 (S.D.N.Y. July 30, 2012) ................................................................15

*In re Schick*,
  234 B.R. 337 (Bankr. S.D.N.Y. 1999) ................................................................19

*In re Singer Products Co.*,
  102 B.R. 912 (Bankr. E.D.N.Y. 1989) ................................................................19

*In re Stotler & Co.*,
  144 B.R. 385 (Bankr. N.D. Ill. 1992) ................................................................18

*In re Universal Clearing House*,
  62 B.R. 118 (Bankr. D. Utah 1986) ................................................................18

*King v. City of N.Y.*,
  2014 U.S. Dist. LEXIS 140790 (S.D.N.Y. Sept. 30, 2014) ................................................................4

*M & L Bus. Mach. Co. v. Youth Benefits Unltd., Inc.*,
  59 F.3d 1078 (10th Cir. 1995) ................................................................18

*Maisonet v. Metro. Hosp. & Health Hosp. Corp.*,
  640 F. Supp. 2d 345 (S.D.N.Y. 2009) ..................................................11

*Mallgren v. Microsoft Corp.*,
  2013 WL 5495556 (S.D.N.Y. Oct. 3, 2013) ........................................11

*Mangiafico v. Blumenthal*,
  471 F.3d 391 (2d Cir. 2006) ..............................................................4

*McConnell v. Commonwealth Pictures Corp.*,
  7 N.Y.2d 465 (1960)............................................................................13

*Oster v. Kirschner*,
  77 A.D.3d 51 (1st Dep't 2010) ............................................................15

*PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
  *Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) ..............................................................10

*Rosner v. Bank of China*,
  2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008)....................................15

*Segal v. Gordon*,
  467 F.2d 602 (2d Cir. 1972) ..............................................................15

*Stephens v. Bd. of Educ.*,
  79 N.Y. 183 (1879)........................................................................ 13, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................4

## Statutes

11 U.S.C. § 542(c)(2)............................................................................18

## Rules

Fed. R. Civ. P. 8(a)........................................................... 2, 7, 9, 11

Fed. R. Civ. P. 9(b) ........................................................ 2, 3, 9, 14, 15

Fed. R. Civ. P. 12(b)(6)........................................................................10

## **INTRODUCTION**

At the core, Plaintiff-Appellant Frank Owens's lawsuit seeks to recover his ill-fated investment in Gaffken & Barriger Fund LLC ("G&B"), from Defendant-Appellee Textron Financial Corporation ("TFC"), which was a secured lender to G&B.  Unbeknownst to both Owens and TFC, G&B was a fraud.  According to the facts as alleged by Owens, TFC had a commercial relationship with G&B, loaned money to G&B under a contract entered into in good faith and in the ordinary course of business, received payment on that antecedent debt, and did not "participate[] in [G&B's] fraud or crime itself."  Owens Br. at 8.[1]

The District Court properly found Owens could not maintain his suit without revealing any cause of action on which it was based, and when the facts alleged failed to state a claim for any known cause of action.  This Court should affirm for three independent reasons.

*First*, Owens has failed to identify a legally recognized cause of action underlying his suit, despite multiple opportunities to do so.  He has unequivocally stated to both the District Court, and now here, that he is *not* pursuing a claim for fraudulent conveyance, unjust enrichment, fraudulent transfer, or aiding and abetting any of these would-be claims.  *See* Owens Br. at 3, 4; Dkt. 20 at 2.  What

---

[1]     Citations to "A:" refer to the Appendix filed by Mr. Owens.  Citations to "Dkt." refer to the District Court's docket.  Citations to "Owens Br." refer to Mr. Owens's Opening Brief.

Owens has not revealed, however, is exactly what claim he *is* pursuing.  The closest Owens has come is (1) to note that "the elements of his claim for relief" include theft of his investment by G&B, TFC's receipt of payment on its antecedent debt, and TFC's purported (but factually unsupported) knowledge of G&B's misdeeds, and (2) to repeatedly refer to "New York public policy."  *See* Owens Br. at 5, 7, 12, 14; Dkt. 20 at 2, 4, 9.  But, as the District Court held, these statements do not evince any legally recognizable claim.  Therefore Owens's Amended Complaint is insufficient under Federal Rule of Civil Procedure 8(a).

*Second*, if this Court somehow uncovers the cause of action Owens purports to plead, the facts he alleges are too vague to satisfy the requisite pleading standard.  Setting aside the speculation and legal conclusions that Owens masquerades as fact, the Amended Complaint does not allege what TFC knew about G&B's illegal activity, how TFC allegedly knew it, or when TFC allegedly learned it.  Rather, the Amended Complaint and the documents it relies on describe TFC entering into a contract, acting pursuant to that contract, and securing repayment of debt incurred under that contract—all in good faith, in the ordinary course of business, and without a hint of knowledge that it unwittingly loaned funds to a fraudulent entity.  As a result, the Amended Complaint does not plead a claim premised on fraud with sufficient particularity under Rule 9(b).

*Third*, if this Court were to take the unprecedented step of recognizing a claim for a violation of New York public policy, it should find Owens nonetheless has not stated a claim under it. The only facts (as opposed to unsupported conclusory assertions) pled by Owens indicate TFC acted in good faith in the normal course of business in entering into a contract with G&B, loaning G&B money under that contract, and receiving payment from G&B on that antecedent debt. The New York Court of Appeals has consistently reaffirmed the principle that the recipient of funds under such circumstances is protected from a third party's later attempt to obtain those funds. *See, e.g.*, *CFTC v. Walsh*, 17 N.Y.3d 162, 173 (2011) (citing *Banque Worms v. BankAmerica Int'l*, 77 N.Y.2d 362, 372 (1991)). It has explained that to hold otherwise would "disorganize all business operations and entail an amount of risk and uncertainty which no enterprise could bear." *Id.* This Court should not do so here. Therefore, it should affirm.

## COUNTER STATEMENT OF THE ISSUES

1.    Whether a plaintiff, who is represented by counsel, may state a claim upon which relief can be granted when he refuses to identify any cause of action underlying his suit and where none can be discerned from his complaint or subsequent briefs?

2.    Whether a complaint satisfies Rule 9(b) when it makes unsupported conclusory assertions about a defendant's knowledge of another entity's fraud—

3

without identifying what facts the defendant knew, when it knew those facts, or how it learned them—and instead pleads facts indicating the defendant had no such knowledge?

3.     Whether New York law protects a creditor that receives payment, in good faith in the ordinary course of business, on a debt that arose in good faith in the ordinary course of business, against a later attempt by a third party to recover that payment because the debtor acted improperly, unbeknownst to the creditor?

## COUNTER STATEMENT OF THE CASE

This case arises from the misdeeds of G&B, a real estate investment fund controlled by its President and CEO, Lloyd Barriger, in which Owens invested. *See* A:5-7 ¶¶ 8, 21-22; A:15-16 ¶ 52.[2]

### A.    <u>2006</u>:  TFC and G&B Enter into Loan and Security Agreement

On January 25, 2006, TFC and G&B entered into a Loan and Security Agreement ("Loan Agreement").  *See* A:5 ¶ 19.  Under the Loan Agreement, TFC

---

[2]     The following facts are taken from:  (1) the Amended Complaint; (2) the Loan and Security Agreement dated January 25, 2006, which is quoted extensively and incorporated by reference in the Amended Complaint; and (3) the superseding indictment and guilty plea in 11 CR 416 (S.D.N.Y.), which are quoted and incorporated by reference in the Amended Complaint.  The Court may consider each source when adjudicating TFC's 12(b)(6) motion.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the [district] court could take judicial notice."); *King v. City of N.Y.*, 2014 U.S. Dist. LEXIS 140790, at *23-24 (S.D.N.Y. Sept. 30, 2014) (citing cases taking judicial notice of criminal indictment).

4

provided G&B with a revolving line of credit of up to $15 million, based on the value of G&B's collateral,[3] in exchange for interest (at a standard variable rate equal to the Prime Rate + 1.5%) and fees.  A:97-101 (§§ 1.1-2.7), *see* A:6 ¶ 20.

The Loan Agreement imposed various obligations on G&B and granted various rights to TFC.  The Loan Agreement required G&B to keep accurate books and records, comply with certain financial covenants and all applicable laws, provide TFC with periodic financial statements, and notify TFC if the value of the collateral materially changed or if G&B's reports contained a material misstatement or omission.  A:110-14, 116-17 (§§ 6.1-6.3, 6.5, 6.7, 6.13, 7.6); *see* A:7-10 ¶¶ 25-29.  The Loan Agreement gave TFC the right to review and audit G&B's books and records, and permitted (but did not require) TFC to exercise any available rights and seek any available remedies if G&B failed to fulfill any of its obligations.  A:110-11, 121-24 (§§ 6.2, 9.1-9.2); *see* A:7 ¶ 23.

## B.    <u>2007-2008</u>:  Owens's Investment, G&B's Default, and Repayment of Antecedent Debt

Beginning in 2007, G&B experienced turmoil as the financial crisis hit.  As G&B's borrowers began defaulting on their loans, the value of TFC's collateral decreased, which correspondingly reduced G&B's ability to borrow under the

---

[3]     G&B pledged as collateral all of its assets, including receivables, and granted TFC a perfected first security interest on those assets.  A:101-03 (§§ 3.1-3.2).

Loan Agreement.  *See* A:97 (§ 1.2).  In response, from January to March 2007, and unknown to TFC, G&B engaged in sham transactions to "stave off" default under the Loan Agreement's financial covenants.  A:51-53.  G&B officials privately expressed fear throughout this time that TFC would "pull the plug," or "shut down" the credit line if it learned of G&B's true financial condition.  A:53, 56-57.

G&B defaulted on its line of credit in March 2007, "and remained in default for much of the period thereafter."  A:46.  On April 18, 2007, TFC sent G&B a letter indicating G&B was in default under an applicable financial covenant, and that TFC was reserving its rights under the Loan Agreement.  A:11 ¶ 34.  Owens alleges TFC chose to "not declare a default[,] which would have had the effect of closing down [G&B's] operations," but rather "entered into forbearance agreements" that permitted G&B to continue operating.  A:13 ¶ 41.

On September 27, 2007, almost two years after TFC and G&B had entered into the Loan Agreement, G&B wired $2.115 million to TFC as payment on debt incurred under the Loan Agreement.  A:16 ¶ 53.  That day, Owens invested $2 million in G&B.  *See* A:15-16 ¶ 52.

When G&B again violated the Loan Agreement, TFC sent additional letters reserving its rights on November 16, 2007, and July 28, 2008.  A:54-55.  In the interim, Barriger pleaded with TFC to "consider helping us . . . work our way out of this crisis."  A:59.

6

**C.** <u>**2011-2013**</u>**:  Barriger's Indictment Reveals G&B's Fraud**

In 2011, Barriger was indicted and charged with mail fraud, securities fraud, and conspiracy for allegedly perpetrating a scheme to defraud investors by soliciting investments under false pretenses from July 2006 through March 2008. *See* A:14-15 ¶ 48; *see also* A:42-70 (superseding indictment filed Feb. 26, 2013). He pled guilty in 2013.  A:15 ¶ 49.

**D.** <u>**2014**</u>**:  District Court Dismisses Owens's Suit Seeking To Recover His Lost Investment in G&B from TFC, Its Secured Lender**

Owens then filed this suit against TFC, attempting to recover his lost investment in G&B.  Dkt. 1.  TFC quickly moved to dismiss the Complaint, arguing that Owens had "fail[ed] to identify, even generally, what legal theory [was] being pursued," in violation of Rule 8(a), and that he had insufficiently pled nascent claims for fraudulent transfer and fraudulent conveyance.  Dkt. 5 at 4-7.  In response, Owens accepted the District Court's invitation to amend his Complaint to correct its deficiencies.  Dkt. 8-10.

When Owens's Amended Complaint no more clearly identified a viable cause of action, TFC again moved to dismiss.  Dkt. 17.  Specifically, TFC again argued that Owens had improperly failed to identify the claim on which he sought relief.  Dkt. 18 at 7-8.  TFC also argued that, even if charitably construed, the Amended Complaint failed to state claims for fraudulent conveyance, unjust enrichment, or aiding and abetting fraud.  Dkt. 18 at 8-15.  Although Owens

responded that he was not bringing any of those claims, he did not specify the claims he *was* in fact bringing. *See* Dkt. 20. Rather, he maintained that "New York public policy dictates that no one may acquire property by his or her own fraudulent or criminal conduct." Dkt. 20 at 2, 4. On reply, TFC reiterated that Owens still had not identified a cause of action, and that Owens could not prevail under a heretofore unrecognized "public policy" claim. Dkt. 23.

The District Court granted TFC's motion, finding Owens had "(i) fail[ed] to provide [TFC] with fair notice of the claims against it, (ii) fail[ed] to meet the heightened pleading standards of Rule 9(b) with respect to claims premised on alleged fraudulent conduct, and (iii) fail[ed] plausibly to plead any claims for relief." A:200. The court explained that Owens had "provide[d] little insight . . . into what particular claim(s) [he sought] to assert, or how the underlying facts of this case would otherwise support any claim recognized by law." A:201. The court further explained that Owens "ha[d] not pleaded facts supporting" his theory that TFC knew about G&B's fraud based on reviewing G&B's books and records, "with any particularity." A:201-02. Finally, the court cast aside Owens's notion that "public policy constitute[d] an independent cause of action under New York law," and held that, even if such a claim existed, Owens could not prevail under it. A:202-03.

## SUMMARY OF ARGUMENT

This Court should affirm dismissal of Owens's Amended Complaint on any of the following independent grounds:

*First*, Owens's Amended Complaint violates Rule 8(a) because it fails to identify the specific cause of action he is pursuing, despite Owens having ample opportunity to do so.

*Second*, any as-yet unidentified cause of action lurking within Owens's Amended Complaint violates Rule 9(b) because it fails to plead facts with sufficient particularity to indicate that TFC knew or should have known about G&B's fraud.

*Third*, even if this Court were to construe New York law to include a cause of action for a violation of public policy—which no court has ever done—Owens could not prevail under it because he has failed to allege facts indicating TFC acted in anything but good faith and in the normal course of business.  Indeed, New York law, as interpreted by the New York Court of Appeals, specifically protects creditors in TFC's position.

9

# **ARGUMENT**

## **THE JUDGMENT SHOULD BE REAFFIRMED**

## **I.    STANDARD OF REVIEW**

This Court reviews *de novo* the grant of a motion to dismiss under Rule 12(b)(6).  *See, e.g.*, *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014).

The court must grant a motion to dismiss when a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a claim, a plaintiff has an "obligation to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

To evaluate whether a plaintiff has done so, the court accepts as true all of the well-pled factual allegations contained in the complaint and construes the complaint in the light most favorable to the plaintiff.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555.  The complaint "must provide 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"  *PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).  The court is not required, however, to accept "legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

10

## II.    OWENS HAS FAILED TO IDENTIFY A CAUSE OF ACTION, BOTH IN THE DISTRICT COURT AND ON APPEAL, IN VIOLATION OF RULE 8(a).

Owens's Amended Complaint is insufficient under Rule 8(a), and should be dismissed, because it does not identify a specific cause of action.  To comply with Rule 8(a), a complaint must "give the defendant fair notice of what the plaintiff's claim is . . . ." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).  *See also Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009) ("[T]he principal function of pleadings . . . is to provide the adverse party with fair notice of the claim asserted" so it may "answer and prepare for trial").

Here, TFC cannot have fair notice of Owens's claims—and the Amended Complaint should therefore be dismissed—because Owens does not make clear what causes of action he is pursuing.  *See, e.g.*, *Mallgren v. Microsoft Corp.*, 2013 WL 5495556, at *6 (S.D.N.Y. Oct. 3, 2013); *Compania Sud Americana de Vapores S.A. v. Global Terminal & Container Servs., LLC*, 2010 WL 2545764, at *1 (S.D.N.Y. June 11, 2010).

As the District Court held, Owens simply has refused to identify a specific cause of action.  *See* A:201.  Instead, he has described the terms of the Loan Agreement, his investment in G&B, and TFC's payment from G&B on the debt G&B incurred under the Loan Agreement, without identifying any legal theory that

11

would entitle him to the compensatory and punitive damages he seeks. *See* Owens Br. at 4-5; A:37. Under these circumstances, he has not put TFC on notice of the claim he is pursuing, and has therefore failed to satisfy Rule 8(a).

Owens has rejected every attempt to unearth the claims upon which he seeks relief. Owens denied TFC's good-faith suggestion in the proceedings below that he may be seeking recovery based on fraudulent transfer, fraudulent conveyance, unjust enrichment, or aiding and abetting fraud. *See* Dkt. 20. In his opening brief in this Court, Owens reiterates that he is not pursuing these claims, and criticizes the District Court for "erroneously [going] in this direction." Owens Br. at 3, 4. Inexplicably, however, Owens continues to refuse to reveal the cause of action he *is* pursuing. TFC remains unaware of any cause of action that might fit the facts Owens alleges. And Owens, who has been represented by counsel throughout this matter, is not entitled to any "special solicitude." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Therefore, Owens's suit must be dismissed because his Amended Complaint does not afford TFC the opportunity to defend itself against his amorphous allegations.

Finally, as the District Court correctly held, Owens's vague references to "New York public policy" do not reveal a cause of action. Throughout his brief, Owens maintains that "New York public policy" prohibits acquisition of property by fraud. *See* Owens Br. at 5, 7-10, 14-15. Owens cites no case, however—and

12

TFC is not aware of one—recognizing the existence of such a standalone claim. *See* A:202 (District Court rejecting "notion that . . . public policy constitutes an independent cause of action under New York law").

To be sure, in each case Owens cites, the New York Court of Appeals has discussed the principle he describes, and the public policy considerations underlying it.[4] But the policy discussion in each case arose in the context of resolving legally a recognized claim—not in adjudicating a conjectural claim premised on a violation of public policy. *See Walsh*, 17 N.Y.3d at 167; *Banque Worms v. BankAmerica Int'l*, 726 F. Supp. 940, 941 (S.D.N.Y. 1989); *McConnell*, 7 N.Y.2d at 468; *Carr*, 2 N.Y.2d at 187-88; *Stephens*, 79 N.Y. at 186. Unlike plaintiffs in those cases, here Owens has failed to identify the claim or theory underlying his lawsuit and has specifically and repeatedly rejected the suggestion that he seeks to recover under a theory of fraud. Therefore, this Court should affirm the judgment dismissing his suit.

---

[4] *See Walsh*, 17 N.Y.3d at 172-73; *Banque Worms*, 77 N.Y.2d at 372-73; *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 469-70 (1960); *Carr v. Hoy*, 2 N.Y.2d 185, 187-88 (1957); *Stephens v. Bd. of Educ.*, 79 N.Y. 183, 187-88 (1879).

**III.    OWENS'S FACTUAL ALLEGATIONS ARE TOO VAGUE TO SATISFY RULE 9(b), AND IN ANY EVENT INDICATE TFC ACTED IN GOOD FAITH AND IN THE NORMAL COURSE OF BUSINESS.**

Even if Owens's Amended Complaint were somehow construed to state a cause of action arising from G&B's fraud, the facts as alleged are insufficient to satisfy the heightened pleading standard under Rule 9(b).  That rule, which obligates Owens to "state with particularity the circumstances constituting fraud or mistake," requires that he "allege facts that give rise to a strong inference of fraudulent intent."  *Acito v. IMCERA Grp. Inc.*, 47 F.3d 47, 52 (2d Cir. 1995).

Owens fails to do so.  While conceding that TFC did not "participate[] in [G&B's] fraud or crime itself," Owens Br. at 8, Owens repeatedly asserts that TFC "knew" or "should have known" that G&B was a fraudulent criminal enterprise without explaining what facts TFC knew about G&B's misconduct, when TFC knew those facts, and how TFC knew them.  *See* A:11-13 ¶¶ 31-33, 35-42. Instead, Owens rests on a false syllogism:  (1) he invested in G&B the same day G&B paid TFC on an antecedent debt incurred under the Loan Agreement; (2) G&B eventually was exposed as a fraud; (3) therefore TFC was aware of G&B's illicit activities.  *See* A:7-8 ¶¶ 23, 25; A:10-12 ¶¶ 30, 36.  Owens's conclusory assertions and unfounded innuendo, even if "plausible," are insufficient because they are premised on "'distorted inferences and speculations.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 104 (2d Cir. 2007) (quoting *Segal v.*

14

*Gordon*, 467 F.2d 602, 606, 608 (2d Cir. 1972)).  As a result, the Amended

Complaint does not satisfy Rule 9(b).

Owens's repeated reference to TFC's ability to review G&B's books and

records, and his allegation that TFC conducted such a review at least once, do not

save his putative claims.  Multiple courts in this Circuit have explained that a

plaintiff cannot satisfy Rule 9(b) by simply alleging a defendant conducted an

audit and saw "indicators of fraudulent activity," including accounting

irregularities that were "red flags," without pleading facts showing the defendant

*actually knew* a fraud was afoot.  *In re Agape Litig.*, 773 F. Supp. 2d 298, 310

(E.D.N.Y. 2011) (holding 9(b) unmet by allegations of defendant's "extensive

monitoring" of accounts, which revealed many "badges of fraud," because they

only indicated defendant had *constructive* knowledge of fraud); *see, e.g., In re*

*Refco Inc. Sec. Litig.*, 2012 WL 3126834, at *1 (S.D.N.Y. July 30, 2012) (citing

*Oster v. Kirschner*, 77 A.D.3d 51, 56 (1st Dep't 2010)) (plaintiff must "allege that

defendants had actual knowledge of the alleged fraud above and beyond alleging

that defendants were 'on notice' to exercise reasonable care"); *Rosner v. Bank of*

*China*, 2008 WL 5416380, at *6 (S.D.N.Y. Dec. 18, 2008) ("New York courts

overwhelmingly recognize that a plaintiff does not satisfy Rule 9(b) by alleging a

bank's actual knowledge of a fraud based on allegations of the bank's suspicions or

ignorance of obvious 'red flags' or warning signs indicating the fraud's

15

existence."); *Chemtex, LLC v. St. Anthony Enters., Inc.*, 490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007) ("[E]ven alleged ignorance of obvious warning signs of fraud will not suffice to adequately allege 'actual knowledge'" where the defendant owes no independent duty to the plaintiff). Owens's Amended Complaint, which does not allege TFC saw any "red flags" or "indicators of fraudulent activity," does not even plead that TFC had the level of "knowledge" that has been repeatedly deemed insufficient to satisfy Rule 9(b).

Barriger's indictment, which is a public document incorporated into the Amended Complaint, also indicates TFC acted in the ordinary course of business and had no actual knowledge of any of G&B's misconduct. First, it describes "reservation of rights" letters TFC sent on April 18, 2007, November 16, 2007, and July 28, 2008, advising G&B that it was in default under the Loan Agreement. A:54-55; *see* A:11 ¶ 34. Second, it describes G&B's behind-the-scenes financial engineering to artificially "stave off default" under the Loan Agreement's financial covenants by engaging in sham transactions. *See* A:51-53. Third, the indictment quotes internal emails from throughout 2007 in which G&B officials privately express fear that TFC will "pull the plug," or "shut down" the credit line if it learns G&B's true financial condition. A:53, 56-57. Finally, the indictment quotes an email from Barriger in 2008—after TFC received G&B's payment on its previously incurred debt, allegedly knowing the funds flowed from G&B's fraud—

16

pleading with TFC to "consider helping us . . . work our way out of this crisis." A:59. No doubt, TFC's reservation of rights, and G&B's financial engineering, fear of losing the credit line, and plea for patience would have been entirely unnecessary if TFC had actually been aware of or a participant in G&B's fraud.

At bottom, Owens's bald assertions that TFC knew G&B was a fraud, and that TFC acted in anything but good faith in the ordinary course of business in receiving payment from G&B on an antecedent debt validly incurred under the Loan Agreement, are wholly unsupported (and in large part contradicted) by the facts alleged in the Amended Complaint and the documents it quotes and incorporates. Therefore, even if Owens had identified a claim for relief (which he does not and cannot), this Court should affirm the judgment.

## IV.    EVEN IF THIS COURT WERE TO RECOGNIZE A CLAIM FOR A "PUBLIC POLICY" VIOLATION UNDER NEW YORK LAW, OWENS COULD NOT RECOVER FROM TFC

In the event this Court were to find New York law recognizes a claim for a violation of "public policy"—which would be unprecedented—TFC would nonetheless be protected from Owens's suit because it acted as a creditor without knowledge of G&B's fraud. The New York Court of Appeals has repeatedly concluded, over more than a century, that the victim of a fraud cannot recover losses from a good-faith creditor of the fraudster, where the creditor was unaware the funds were connected to any crime and did not participate in any wrongdoing.

17

*See Walsh*, 17 N.Y.3d at 171-73; *Banque Worms*, 77 N.Y.2d at 372-73; *Stephens*, 79 N.Y. at 186.  The court reasoned that to hold otherwise would "disorganize all business operations and entail an amount of risk and uncertainty which no enterprise could bear."  *Walsh*, 17 N.Y.3d at 173 (citing *Banque Worms*, 77 N.Y.2d at 372).[5]

So too, here, Owens should not be permitted to "follow" the money G&B "obtained by fraud or felony" "into the hands" of TFC, which, as discussed above, "received it bona fide and for a valuable consideration in due course of business."  *Stephens*, 79 N.Y. at 186.[6]  TFC does not begrudge Owens's understandable

---

[5]    The Court of Appeals additionally reasoned that money, unlike a chattel such as artwork, is inherently fungible and unidentifiable.  *See Walsh*, 17 N.Y.3d at 173 & n.5.  The non-binding bankruptcy cases Owens cites, to the extent they are relevant at all, are not to the contrary.  *See* Owens Br. at 15; *see also* A:203 n.3 (disregarding bankruptcy cases cited by Owens).  Indeed, none of the cases Owens cites permits recovery of funds held by an innocent third party.  *See M & L Bus. Mach. Co. v. Youth Benefits Unltd., Inc.*, 59 F.3d 1078, 1080-81 (10th Cir. 1995); *In re Mark Benskin & Co.*, 161 B.R. 644, 653-56 (Bankr. W.D. Tenn. 1993); *In re Stotler & Co.*, 144 B.R. 385, 390-92 (Bankr. N.D. Ill. 1992); *In re Iorizzo*, 114 B.R. 19, 24 (Bankr. E.D.N.Y. 1990).  *See also In re Universal Clearing House*, 62 B.R. 118, 122-24 (Bankr. D. Utah 1986) (declining to "impose on a subsequent transferee who takes for value and in good faith the affirmative duty to trace all funds he receives in order to insure they are not voidable transfers").

[6]    Owens also cites bankruptcy cases addressing the ordinary course of business defense to fraudulent transfer claims under 11 U.S.C. § 542(c)(2).  *See* Owens Br. at 11.  These cases are plainly irrelevant, as Owens has repeatedly stated he is not bringing a fraudulent transfer claim.  *See* Owens Br. at 3, 4; Dkt. 20 at 2.  But even if these cases were relevant to support Owens's hypothetical claim, they do not support his position because each holds that a good faith creditor, like

*(Cont'd on next page)*

attempts to pursue every opportunity to recover the significant funds that he lost as a result of G&B's fraud.  Even so, there is no legal basis for holding TFC accountable for G&B's actions, which TFC did not participate in and knew nothing about.  As the New York Court of Appeals explained:

> [A]n innocent [third party] who received possession of tainted property in good faith and gave fair consideration for it should prevail over the claims of the original owner or owners consistent with this State's strong public policy of ensuring finality . . . .

*Walsh*, 17 N.Y.3d at 177 (emphasis added).

---

TFC here, acted in the ordinary course of business when it received payment under the agreed-upon terms of a contract.  *See In re Kelly's Chocolates, Inc.*, 268 B.R. 345, 349 (Bankr. W.D.N.Y. 2001) (repaying lender with funds invested by others would have been in ordinary course); *In re Ramco/Fitzsimons Steel Co.*, 95 B.R. 299, 301 (Bankr. W.D.N.Y. 1988) (paying on antecedent debt was in ordinary course).  *See also In re Schick*, 234 B.R. 337, 348 (Bankr. S.D.N.Y. 1999) (irregular early payment was outside ordinary course); *In re CIS Corp.,* 214 B.R. 108, 120-21 (Bankr. S.D.N.Y. 1997) (paying on varied dates was in ordinary course); *In re Drexel Burnham Lambert Grp., Inc.*, 157 B.R. 532, 537-38 (Bankr. S.D.N.Y. 1993) (modifying agreement unilaterally was outside ordinary course); *In re Faleck & Margolies, Inc.*, 153 B.R. 123, 125 (Bankr. S.D.N.Y. 1993) (making payments later than normal was outside ordinary course); *In re Singer Products Co.*, 102 B.R. 912, 934-35 (Bankr. E.D.N.Y. 1989) (changing account credited by payment was outside ordinary course).

## **CONCLUSION**

For the foregoing reasons, the District Court's judgment should be affirmed.

Dated:   New York, New York
         October 14, 2014

                              /s/ Mitchell A. Karlan

                              Mitchell A. Karlan
                              Nancy Hart
                              Gabriel K. Gillett
                              GIBSON, DUNN & CRUTCHER LLP
                              200 Park Avenue
                              New York, New York 10166-0193
                              (212) 351-4000

                              *Attorneys for Defendant-Appellee*
                              *Textron Financial Corporation*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), the typeface requirement of Federal Rule of Appellate Procedure 32(a)(5), and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief contains 4,750 words, as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), and is prepared in a proportionally spaced typeface (14-point Times New Roman).


Dated:  October 14, 2014                    <u>/s/ Mitchell A. Karlan</u>
                                                         Mitchell A. Karlan